UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

George S. Strader, Jr.,

    Plaintiff,

    v.                                      Case No. 1:04cv829

American Federation of State,              Judge Michael R. Barrett
County and Municipal Employees,
Local 1027, *et al.*,

    Defendants.

**OPINION & ORDER**

This matter is before the Court upon Defendant Cincinnati Metropolitan Housing Authority's ("CMHA") Motion for Summary Judgment.  (Doc. 19)  Also before the Court is Plaintiff George S. Strader, Jr.'s Motion for Stay of Disposition of Defendant CMHA's Motion for Summary Judgment.  (Doc. 23)

**I.**     **PROCEDURAL POSTURE**

CMHA filed its Motion for Summary Judgment on February 15, 2006.  Under S.D. Ohio Civ. R. 7.2(a)(2) and Federal Rule of Civil Procedure 6(e), Strader's response to the Motion was due on or before March 13, 2006.  Strader did not file a response on this date.  On March 22, 2006, CMHA filed a Supplement to its Motion for Summary Judgment.  The next day, Strader filed a Motion to Stay the Disposition of CMHA's Motion for Summary Judgment based on Federal Rule 56(f).  In the Motion, Strader states that there is outstanding discovery which is necessary to allow the him to respond to the Motion for Summary Judgment.  Strader requested until May 7, 2006 to file its response.  CMHA

opposed Strader's Motion, pointing out that the response time for Strader had passed, and the affidavit of Strader's counsel did not comply with the requirements of Rule 56(f).

The Court finds that Strader's Motion to Stay is untimely, and as CMHA points out, Strader had other alternatives for relief from the March 13, 2006 deadline. Therefore, Strader's Motion for Stay of Disposition of Defendant CMHA's Motion for Summary Judgment (Doc. 23) is denied. Nevertheless, the Court will consider Strader's untimely Memorandum in Opposition, filed on May 5, 2006 (Doc. 26) in its decision on CMHA's Motion for Summary Judgment.

## II.  FACTUAL BACKGROUND

This case arises out of the termination of Strader's employment. (Doc. 2) Strader was formerly employed as a Senior Maintenance Worker by CMHA. (Id. ¶ 6) In the Amended Complaint, Strader's claims against CMHA are race discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (Count Three); disparate impact under Title VII (Count Four); and wrongful discharge in violation of public policy (Count Five).[1]

Strader is African-American. (Doc. 2, ¶ 6) Strader alleges that the discipline and sanctions imposed on African-American employees are more harsh and severe than those imposed on similarly-situated Caucasian or other non-African-American employees. (Id., ¶¶ 34, 37-38) In his affidavit, Strader states that Donald Troendle, CMHA's Executive Director, is responsible for establishing a pattern and practice of discharging African-

---

[1] In his Memorandum in Opposition to CMHA's Motion for Summary Judgment, Strader makes reference to claims brought under 42 U.S.C. § 1981. However, a claim under this statute is not alleged in the Amended Complaint.

American maintenance workers for reasons which do not justify a discharge. (Doc. 26-2, Strader Aff. ¶¶ 2-3) Troendle is Caucasian. (Id., ¶ 2) Strader states that CMHA, at the direction of Troendle, has discharged African-American employees for conduct which Caucasian employees were not discharged. (Id., ¶¶ 6-7) As an example, Strader states that African-American employees were discharged for having driving violations, while a Caucasian employee with a DUI violation was permitted to remain employed. (Id., ¶ 7)

CMHA maintains that Strader was terminated for insubordination. Robert Hogan, who was Strader's direct supervisor at the time of his termination, is African-American. (Doc. 19-3, Hogan Aff. ¶ 15) Hogan explains that in January of 2004, he met with his subordinates as a group, including Strader. (Id., ¶ 5) Hogan states that he told the employees that their work vehicles had to be cleaned out, and excess supplies had to be returned to the stockroom within two weeks. (Id.) Hogan states that he had two shop meetings to emphasize this point. (Id.) Hogan states that within two weeks, he inspected the vehicles, and Strader's vehicle was in the same condition as it was prior to the meetings. (Id., ¶ 6) Hogan states that he gave Strader a verbal reprimand. (Id.) Hogan explains that on March 14, 2004, he met personally with Strader about the need to clean his vehicle. (Id., ¶ 7) Hogan states that the next day, Strader was not at work and his vehicle was in the same condition. (Id., ¶ 8) Hogan states that he held another meeting with the employees, and used Strader's vehicle as an example to point out the dangers of having a messy van. (Id.) Hogan states that when Strader returned to work, he had another conversation with him about his vehicle, and told him that he must get it organized by the end of the day, or Hogan would write him up. (Id., ¶ 9) Hogan also states that he had union members speak to Hogan about the likelihood of suspension or termination if

Strader did not comply his request to clean his vehicle. (Id., ¶ 10) Hogan states that on April 6, 2004, Strader was given 24-hours notice to comply with Hogan's directive. (Id., ¶ 11) Strader did not comply, and was given a ten-day suspension for insubordination. (Id.) Hogan states that on May 14, 2006, Strader's van was still not cleaned and organized. (Id. ¶ 13) Hogan explains that Strader's employment was terminated on June 24, 2004. (Id. ¶ 14) Strader states that he did clean his van to the best of his ability, and he had never previously disciplined for a messy van. (Strader Aff. ¶ 9)

### III.     ANALYSIS

#### A.     Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact, but then the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita*, 475 U.S. at 587. However, the nonmoving party may not rest on the mere allegations in the pleadings. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

#### B.     Race Discrimination under Title VII

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

### 1. Pattern or Practice of Discrimination

While it is not entirely clear that Strader is proceeding on this theory of discrimination, the Court will analyze such a claim.

During the first stage of a pattern or practice case, the plaintiff's burden is "to demonstrate that unlawful discrimination has been a regular procedure or policy followed by an employer or group of employers." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 360 (1977). However, the Sixth Circuit has held that the pattern-or-practice method of proving discrimination is not available to individual plaintiffs. *Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565, 575 (6th Cir. 2004). As the court has explained: "a pattern-or-practice claim is focused on establishing a policy of discrimination; because it does not address individual hiring decisions, it is inappropriate as a vehicle for proving discrimination in an individual case." *Id.*, *quoting Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 761 (4th Cir. 1998) ("[t]he Supreme Court has never applied the *Teamsters* method of proof in a private, non-class suit charging employment discrimination. Rather, the Court has noted that there is a 'manifest' and 'crucial' difference between an individual's claim of discrimination and a class action alleging a general pattern or practice of discrimination." ); *see also Herendeen v. Mich. State Police*, 39 F.Supp.2d 899, 905 (W.D.Mich. 1999) (holding that the individual plaintiffs may not rely on the *Teamsters*

framework as the sole basis for proving their discrimination claims).[2]

Because Strader is bringing his discrimination claim as an individual, he cannot proceed on the pattern-or-practice method of proving discrimination. Therefore, CMHA is entitled to summary judgment on this claim.

### 2. Disparate Impact

While Strader has not necessarily argued his claim under a disparate impact analysis, his Amended Complaint labels his claim in Count Four as such. For the sake of completeness, the Court will address Strader's purported claim of disparate impact.

Disparate impact analysis is used when an employer's facially neutral policy adversely affects a protected class. *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971). Generally, the disparate impact analysis is used in a class action, but the Sixth Circuit has stated that it may also form the basis of an individual claim. *Bacon*, 370 F.3d at 576-77, *citing Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1048 (6th Cir. 1998).

The Supreme Court has devised a three-part, burden-shifting test to determine whether an unlawful disparate impact exists in any particular case:

> First, the plaintiff must establish a *prima facie* case of discrimination-*i.e.*, the plaintiff must establish that an adverse impact has occurred. If the plaintiff succeeds, the employer must show that the protocol in question has "a manifest relationship to the employment"-the so-called "business justification." If the employer succeeds, the plaintiff must then show that other tests or selection protocols would serve the employer's interest without creating the undesirable discriminatory effect.

---

[2]However, the court stated that pattern-or-practice evidence may be relevant to proving an otherwise-viable individual claim for disparate treatment under the *McDonnell-Douglas* framework. *Bacon*, 370 F.3d at 575; *see also Lowery*, 158 F.3d at 761 (finding that pattern or practice evidence may be useful in an individual discrimination claim "to prove the fourth element of a *prima facie* case, that the individual's adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination or that the employer's articulated reasons for the adverse action was merely pretext, or to establish the plaintiff's ultimate burden.") (internal citations omitted).

*Isabel v. City of Memphis*, 404 F.3d 404, 411 (6th Cir. 2005) (citations omitted). A *prima face* case is established when: (1) plaintiff identifies a specific employment practice to be challenged; and (2) through relevant statistical analysis proves that the challenged practice has an adverse impact on a protected group. *Id.*, *citing Johnson v. U.S. Dept. of Health and Human Servs.*, 30 F.3d 45, 48 (6th Cir. 1994).

Even if the Court were to accept that Strader has identified a specific employment practice--discharging African-American maintenance workers for reasons which do not justify discharge--Strader has not provided any statistical analysis. Without such evidence, Strader cannot show that the challenged practice has an adverse impact on African-Americans. Therefore, Strader has not established a *prima facie* case of disparate impact, and CMHA is entitled to summary judgment on this claim.

### 3. Disparate Treatment

Strader has not argued that there is direct evidence of discrimination. Where no direct evidence of discrimination exists, a claim of employment discrimination is to be analyzed using the burden-shifting approach first announced in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). A plaintiff has the initial burden of proving a *prima facie* case of discrimination by a preponderance of the evidence. *Id.* at 802.

To establish a *prima facie* case of discrimination, a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for his job and performed it satisfactorily; (3) despite his qualifications and performance, he suffered an adverse employment action; and (4) that he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class. *Johnson v. University of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000).

If the plaintiff succeeds in establishing a *prima facie* case, an inference of discrimination arises, and the burden then shifts to the defendant to articulate some legitimate nondiscriminatory reason for its actions. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981). If the defendant articulates a nondiscriminatory reason for its actions, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons put forth by the defendant were not its true reasons but were a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 802. The plaintiff may prove pretext by showing either that: (1) the proffered reason had no basis in fact, (2) the proffered reason did not actually motivate the adverse action, or (3) the proffered reason was insufficient to motivate the adverse action. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). The ultimate burden of persuading the trier of fact that the employer intentionally discriminated against her remains at all times with the plaintiff. *Burdine*, 450 U.S. at 253.

Strader does not articulate what proof in the record establishes a *prima facie* case of race discrimination. However, even if the Court accepts that Strader has established a *prima facie* case, Strader's claim must fail because Strader has not shown that CMHA's nondiscriminatory reason for its actions is pretextual.

CMHA states that it terminated Strader for insubordination based on his failure to clean his vehicle as directed. Strader counters that CMHA's proffered reason is not worthy of credence. Strader states that Hogan had worked with Strader for a number of years and had never previously disciplined Strader for a "messy" vehicle. Strader also states that he cleaned his van to the best of his ability.

Unsupported speculation cannot form the basis for demonstrating pretext. *See*

*Sutherland v. Michigan Dept. of Treasury*, 344 F.3d 603, 623 (6th Cir. 2003).  Moreover, pretext may not be shown by attacking the adverse employment decision itself.  *See Hein v. All America Plywood Co.*, 232 F.3d 482, 489-90 (6th Cir. 2000); *see also Brocklehurst v. PPG Indus., Inc.*, 123 F.3d 890, 898 (6th Cir. 1997) (holding that soundness of an employment decision may not be challenged as a means of showing pretext).  Because Strader has not satisfied his burden of proving pretext, CMHA is entitled to summary judgment on this claim.

### C. Wrongful Discharge in Violation of Public Policy

Under Ohio law, termination of an at-will employee is wrongful if the termination was against a clear public policy.  *Painter v. Graley*, 639 N.E.2d 51, 56 (Ohio 1994).  In *Collins v. Rizkana*, the Ohio Supreme Court adopted the following analysis for determining whether the termination was against public policy:

> 1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).
>
> 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).
>
> 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).
>
> 4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

652 N.E.2d 653, 657-58 (Ohio 1995).  However, this Court has recognized that Ohio courts have held that "[a] claim for wrongful discharge in violation of public policy embodied in [a] statute prohibiting discriminatory practices will fail if the underlying discrimination claim fails."  *Desanzo v. Titanium Metals Corp.*, 351 F. Supp. 2d 769, 782-83 (S.D. Ohio 2005)

(holding that because plaintiff's disability discrimination claim failed, his public policy claim failed as a matter of law). Because Strader's underlying claims of discrimination have failed, Strader's claim based on Ohio's public policy must also fail as a matter of law. Therefore CMHA is entitled to summary judgment on this claim.

### IV.    CONCLUSION

Based on the foregoing, it is hereby **ORDERED** as follows:

1. Plaintiff's Motion for Stay of Disposition of Defendant CMHA's Motion for Summary Judgment (Doc. 23) is **DENIED**;

2. Defendant Cincinnati Metropolitan Housing Authority's Motion for Summary Judgment (Doc. 19) is **GRANTED**; and

3. This matter shall be **CLOSED** and stricken from the Court's docket.

**IT IS SO ORDERED.**

                                                 */s/ Michael R. Barrett*
                                                 Michael R. Barrett, Judge
                                                 United States District Court